**FILED**

UNITED STATES DISTRICT COURT IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
EASTERN DISTRICT OF NEW YORK

JAN 04 2012    Index No.
-------------------------------------------------------------X

DEAN HANNIFORD,

Plaintiff, BROOKLYN OFFICE

**COMPLAINT**

-against-

CV12 - 0040

THE CITY OF NEW YORK, DETECTIVE ROSCOE
McCLENAN SHIELD NO. 7988, DETECTIVE RALPH
M. SHERLOCK, SHIELD NO. 6933,
DETECTIVE BREINER, DETECTIVE RONALD
O'NEIL SHIELD NO. 5320, SERGEANT
MORGAN, AND JOHN DOES 1-6

GLEESON, J

**JURY DEMAND**

GOLD, M.J.

-------------------------------------------------------------x

    Plaintiff Dean Hanniford, by his Attorneys, OFODILE & ASSOCIATES, P.C.,

    complaining of the Defendants, the City of New York, Detective Roscoe

    McClenan Shield No. 7988, Detective Ralph M. Sherlock, Shield No. 6933,

    Detective Breiner, Sergeant Morgan, Detective Ronald O'Neil Shield No. 5320,

    and "John Does 1-6",  alleges as follows:


                    **JURISDICTION AND VENUE**

1.    This is an action at law to redress arrest, imprisonment, and prosecution without

    probable cause, in violation of the Plaintiff's rights under the Fourth, Fifth, and

    Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. This is

    also an action to redress the pain and suffering and psychological injuries

    sustained by Plaintiff as a result of the intentional, malicious and reckless acts of

    the City of New York, and some of its Police Officers. The Court also has

1

supplemental jurisdiction over Plaintiffs' claims brought under Article 1, Section 12 of the New York State Constitution for violation of their State constitutional rights against unreasonable searches and seizures

2.     Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28 U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the Fourth, Fifth, and Fourteenth Amendments to the Constitution, and by 42 U.S.C. § 1983.

3.     Venue is proper in the Eastern District of New York because the events complained of occurred in the County of Kings which is within the Eastern District of New York.

## PARTIES

4.     At all times material and relevant to the facts of this case, Plaintiff resided in Brooklyn, New York, within the jurisdiction of this Court.

5.     At all times relevant and material to this case, Defendant City of New York was and still is a municipal corporation incorporated under the laws of the State of New York and was the employer of the individual defendants and is liable under

2

the common law agency and/or respondent superior rule for the actions of the

individual defendants complained of herein.

6.    At all time relevant and material to this case, Defendants Detective Roscoe

McClenan Shield No. 7988, Detective Ralph M. Sherlock, Shield No. 6933,

Detective Breiner, Sergeant Morgan, Detective Ronald O'Neil Shield No. 5320,

and "John Does 1-6" (collectively referred to as Police Officers), were employees

of the City of New York, employed in its Police Department, and upon

information and belief, worked from the 75th Precinct, in Brooklyn, New York.

## FULFILMENT OF ADMINISTRATIVE REMEDIES

7.    Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New

York within ninety days of the happening of the events mentioned herein and at

least 30 days has elapsed from the said date without the City of New York settling

said claims.

## FACTUAL ALLEGATIONS

8.    On August 5, 2009, at approximately 2:00 p.m., Plaintiff was at 582 Wyona

Street, Brooklyn, N.Y., a friends's house where they produced/worked on music

when there was a knock on the door.

3

9.    Plaintiff's friend cracked open the door and it was the Police who stated that they were looking for someone who robbed another person.

10.    As Plaintiff's friend opened the door slightly to know who was at the door, the Police forced themselves into the house and started accusing the occupants of the house of the robbery they alleged took place.

11.    The Police asked Plaintiff and his friend Michael to step downstairs to be identified by the crime victim. When the police presented Plaintiff and Michael to the crime victim, he stated that it was neither Plaintiff nor Michael who robbed him. A witness to the crime who was with the crime victim at the scene of the crime also confirmed that neither Plaintiff nor Michael was the person who robbed the victim.

12.    Before Plaintiff and Michael returned upstairs to the apartment, the police had totally ransacked and torn out the apartment, without a warrant and found nothing.

13.    There was a door with a padlock in the apartment and the Police demanded that the occupants open it or they would kick it in. Because it was not Plaintiff's or Michael's house and they did not have the key, they told the police that they did not have the key and did not know what was inside as the Police demanded to be told what was inside.

4

14.   The officers told Plaintiff and his friend that they were being smart and promised to get them before they left the apartment. The Police did not kick the door in or get access to the locked room before they left.

15.   On August 27, 2009, at approximately 2:50 p.m., Plaintiff requested that a friend of his friend that he knew only as English drop him at a store less than one mile away from Wyona and Edgeman Streets, where they started off.

16.   English was driving a Nissan Pathfinder. The Pathfinder was pulled over on the way by Detectives McClean and Sherlock who were driving a sedan and other Officers/Detectives were also later involved.

17.   Once the Detectives flashed the light in their car, Plaintiff asked English whether his car was registered and whether or not he had his license and he stated that he did. Plaintiff saw no reason for the stop.

18.   When the police approached, they did not give a reason why they stopped the vehicle. Plaintiff who was sitting in the front passenger sit was pulled down and violently slammed face down on the concrete and the officers had their knees on his neck and other parts of his body while they handcuffed him.

5

19.    Plaintiff did not see the driver after he was pulled out of the vehicle nor did he see
       him again after he was arrested. The Detectives did not say anything to Plaintiff
       regarding why he was being arrested and placed him in the police car.

20.    While driving Plaintiff to the Precinct, the Detectives were laughing and told
       Plaintiff: "You know we found a gun on you?" "You know why you are going
       down?" Because Plaintiff never had a gun and believed that the officers were
       joking and only trying to intimidate him, he kept quiet.

21.    When Plaintiff got to the Precinct, the Detectives started roughing Plaintiff up and
       told Plaintiff that if he did not cooperate with them they would send him back to
       his fucking hut in Jamaica.

22.    The officers then told Plaintiff that they took a gun off him and that it was his gun.

23.    Plaintiff told the officers that they knew he had no gun and that they knew that
       they did not recover any gun on him.

24.    One of the Detectives then twisted Plaintiff's hands behind his back hurting
       Plaintiff and handcuffed him (both hands behind his back and up the rail) to the
       poll in such a way that he could not sit down throughout the time he was in the
       Precinct and Plaintiff was also handcuffed too tightly.

6

25.    Detectives Sherlock and McClenan then told Plaintiff that they wanted to make a deal with him. They offered him the following deal: "Spend one week in Rikers Island, we call the DA and make you and informant and you work for us for one year".

26.    The Detectives told Plaintiff that they wanted him to work for them as an informant because they believed he knew a lot of people in the community/neighborhood and knew what was going on and he was the type of person they were looking for to work for them as an informant.

27.    Plaintiff refused the offer to work as an informant. He told the Detectives that he did not know any type of person that the Detectives were supposed to be looking for and would not be able to help them and would not therefore work for them as an informant.

28.    After refusing to be an informant, the Detectives left the room and when they returned sometime later, they told Plaintiff that he had been charged with armed robbery.

29.    When Plaintiff asked why he was being charged with armed robbery, Detective McClenan told Plaintiff: "I am not talking to you because you want to be a smart ass, let's see you get out of this one" (meaning the robbery charge).

7

30.  After Detective McClenan said that, they left and no one came to the room until
     approximately 8:00 p.m. when Plaintiff was taken to Central Booking.

31.  Plaintiff was chained to a poll in a painful and strained position and in such a way
     that he was forced to stand up all evening and was not given a bathroom break.
     The individual Defendants putt Plaintiff in a very difficult and painful position
     just to punish him for refusing to be a police informant and intentionally violated
     his constitutional rights as clearly interpreted by the Supreme Court in *Hope v.
     Pelzer*, 536 U.S. 122.

32.  Plaintiff went to arraignment by 8:00 p.m., on August 28, 2009 and was assigned
     a Legal Aid Counsel. Bail was set at $25,000.00 on the robbery charge and $1.00
     on the gun possession charge. Plaintiff was remanded on both charges and sent to
     Rikers Island.

33.  Plaintiff was indicted on the gun possession charge but not on the robbery charge.

34.  When Plaintiff was not indicted on the robbery charge, the bails were switched to
     $25,000.00 on the gun possession and $1.00 on the robbery charge. After the
     indictment, Plaintiff continued to make court appearances from Rikers Island at
     the Supreme Court and criminal court for the gun possession and robbery charges,
     respectively.

8

35.    Plaintiff was imprisoned from August 27, 2009 to April 16, 2010 when he made bail, after his bail was reduced to $2,000.00.

36.    The armed robbery charge against Plaintiff was dismissed on or about February, 2010 and he continued to go to court for the gun possession charges which were eventually dismissed in favor of Plaintiff on March 31, 2011.

37.    Upon information and belief, the same officers who were involved in the show up of Plaintiff and his friend as the robbers and promised to get Plaintiff when he was not identified as the robber were also involved in his arrest on the street on trumped up charges of gun possession.

38.    While at the Precinct when Plaintiff was telling the Detectives that they should not be putting bogus charges on innocent people for no reason, that they knew he never had a gun and there was no way he could have had a gun, Defendants stated to Plaintiff that they saw the gun on Plaintiff while driving in their sedan while Plaintiff was in the passenger seat of an SUV.

39.    The allegation that Plaintiff had a gun (which was allegedly recovered from his waistband), was seen with a gun or that a gun was ever recovered on the Plaintiff or from the Plaintiff on the day in question is totally and utterly false.

9

40.    If Defendants produced any gun that they allege was seen on Plaintiff, was in possession of Plaintiff or recovered from Plaintiff, then it was a frame up of Plaintiff, an increasingly common practice in the New York City Police Department and especially within the 75th Precinct which the police practice to meet their arrest quotas, pad their arrests records and to enhance their opportunities for promotion and remuneration. Such practice is so common with the Police that they call it is "flaking" and "flaking a nigger" when done to a Black person, usually a young Black man.

41.    The allegation that Plaintiff was involved in an armed robbery and that when he was arrested in the street after being thrown down from the SUV and arrested (as he later learned), for allegedly being in possession of a gun used in the robbery (or exact same type of gun) and in possession of the robbery paraphernalia that were allegedly used to rob someone on the day Plaintiff and his friend were shown to the robbery victim who positively stated to the knowledge of these Defendants that Plaintiff was not the alleged robber, was part and parcel of the same "flaking of a nigger" by these defendants because of Plaintiff's refusal to be a police informant.

42.    Plaintiff was charged with armed robbery in the first degree, a Class B felony carrying 25 years in prison. By charging Plaintiff with armed robbery when there was no colorable basis in fact or law for Defendants to do so, Defendants' sole purpose and motive was to ensure that Plaintiff was given a very high bail so that he would not make bail and would stay in jail for a long time as punishment for his refusal to work as an informant, be forced to plead guilty to a crime he did not commit or go to trial and risk being convicted on trumped up charges. Defendants also wanted Plaintiff held in jail for such a long time because of the high bail that their charge of armed robbery against Plaintiff would entail that he would be forced to change his mind and agree to work as an informant for Defendants.

43.    The actions of the Defendants complained of herein were done intentionally, maliciously and in knowing violation of Plaintiff's constitutional rights and Plaintiff is entitled to substantial punitive damages to punish them for their callous and reckless actions and also to discourage others from continuing to pursue such wanton unconstitutional conduct.

44.    As a result of Defendants' actions, Plaintiff was injured physically and emotionally, was denied his freedom and enjoyment of life and from pursuing his employment and is therefore entitled to general compensatory damages in the amount adequate to compensate him for the injuries he sustained as a result of the Defendants's unconstitutional action.

45.    The false arrest, malicious prosecution, assault, battery and  use of excessive force violated Plaintiff's rights under the common law and also his federal and state constitutional rights and are liable to him under 42 U.S.C. §1983 and Article 1, Section 12 of the New York State Constitution.

46.    The Defendant Police Officers knew that charging Plaintiff with a high felony of armed robbery in the first degree carries a sentence of 25 years in prison and also they knew when they charged him with the said crime that the alleged crime victim had already exonerated Plaintiff of the charged crime and had affirmatively stated in the presence of Plaintiff and some of these Defendants that Plaintiff did not commit the crime of armed robbery he was charged with by these Defendants. Defendants also knew that the only witness to the crime who was with the crime victim at time of the robbery had also affirmatively exonerated Plaintiff of the alleged crime of armed robbery.

47.    Defendant Police Officers knew that there was no evidence to connect Plaintiff to the armed robbery and also knew that there was no way they could prove that Plaintiff was guilty of armed robbery but maliciously charged and prosecuted Plaintiff for armed robbery. Charging and prosecuting Plaintiff for armed robbery was done maliciously.

12

48.    Not only did Defendants charge Plaintiff with gun possession when he did not possess any gun to their knowledge, but they also provided a mask and other robbery paraphernalia which they falsely alleged that they recovered from Plaintiff in order to ensure a Penal Law 265.03 charge of a Class C felony (an intention to use a gun for an illegal purpose) which carries a 15 year sentence, as opposed to an ordinary gun possession charge which is a Class A misdemeanor.

49.    Charging Plaintiff with gun possession that he did not possess was not only unconscionable, but going out of their way to pad the charge in such a way as to force Plaintiff to face a 15 year sentence was malicious as Defendants knew that they could not prove that charge of violent gun possession, the Class C felony offense.

50.    As a result of charging Plaintiff with armed robbery and the expected high bail that charge caused, Plaintiff was incarcerated from August 27, 2009 to April 16, 2010 .

51.    As a result of charging Plaintiff with Penal Law 265.03 violation and the expected high bail that charge caused, Plaintiff was incarcerated from August 27, 2009 to April 16, 2010 .

52.     As a result of the violations of Plaintiff's common law and constitutional rights
        alleged herein, Plaintiff has sustained bodily injuries, suffered physical pain, and
        suffered from serious mental and emotional injuries and continues to suffer
        mentally and emotionally.

53.     Plaintiff has also sustained financial losses/damages and would continue to
        sustain same as a result of the actions of the defendants complained of herein.

54.     The actions of individual Defendants were callous, wanton, premeditated, done
        intentionally and knowingly to deprive Plaintiff of his constitutional rights and
        Plaintiff is entitled to substantial punitive damages against each of them.

### AS FOR A FIRST CAUSE OF ACTION

55.     Plaintiff repeats and realleges paragraphs 1 through 54 as if each paragraph is
        repeated verbatim herein.

56.     Had the defendant Police Officers not made up a felony charge of armed robbery
        in the first degree against Plaintiff, Plaintiff would have, in all likelihood, been
        released on a much smaller bail or his own recognizance and a very high bail
        would not have been set and Plaintiff would have spent at most a couple of days
        in jail.

14

57.   Because Plaintiff was charged with armed robbery, a Class B felony, which the officers knew there was no evidence to support and that the felonies would never be successfully prosecuted (in fact Plaintiff was never indicted this charge), Plaintiff spent almost eight months in jail which was at least seven and half months more time than he would have spent under any circumstances had defendants not maliciously inflated the charges.

58    As a result of his malicious prosecution Plaintiff was deprived of his liberty which he would not otherwise have been deprived of by the individual Defendants in violation of his Federal and State constitutional rights as well as his common law rights not to be subjected to malicious prosecution.

## AS FOR A SECOND CAUSE OF ACTION

59.   Plaintiff repeats and realleges paragraphs 1 through 58 as if each paragraph is repeated verbatim herein.

60.   Had the defendant Police Officers not made up the felony charge of Class C violent gun possession against Plaintiff which carries with it a 15 year jail sentence, Plaintiff would have, in all likelihood, been released on a much smaller bail or on his own recognizance and a very high bail would not have been set and Plaintiff would have spent at most a couple of days in jail.

61. Because Plaintiff was charged with a Class C felony which the officers knew there was no evidence to support and could never have been successfully prosecuted, Plaintiff spent almost eight months in jail which was at least seven and half months more time than he would have spent under any other circumstances had defendants not maliciously inflated the charges.

62 As a result of his malicious prosecution Plaintiff was deprived of his liberty which he would not otherwise have been deprived of by the individual Defendants in violation of his Federal and State constitutional rights as well as his common law rights not to be subjected to malicious prosecution.

## AS FOR A THIRD CAUSE OF ACTION

63. Plaintiff repeats and re-alleges paragraphs 1 through 62 as if each paragraph is repeated and re-alleged verbatim herein.

64. Plaintiff was arrested by the individual Defendants without probable cause to believe that he had committed a crime in violation of his Fourth and Fourteenth Amendment rights not to be arrested without probable cause and defendants are liable to Plaintiff in damages pursuant to 42 U.S.C § 1983 as well as under Article 1 § 12 of the New York State Constitution.

## AS FOR A FOURTH CAUSE OF ACTION

65.     Plaintiff repeats and realleges paragraphs 1 through 64 as if each paragraph is repeated and realleged verbatim herein.

66.     Plaintiff was arrested by the individual defendants and charged with various crimes, including armed robbery and violent weapons possession. The charges filed against Plaintiff were all dismissed in Plaintiff's favor.

67.     When the individual defendants charged Plaintiff with the various crimes, they did so maliciously and without probable cause to believe that the crimes would be successfully prosecuted as there were no factual basis for those charges in violation of Plaintiff's constitutional rights to be free from malicious prosecution as guaranteed by both Federal and State Constitutions. Defendants did not also have a reasonable basis to believe that Plaintiff would be successfully prosecuted for the offenses they charged him with in violation of his common law right not to be subjected to malicious prosecution.

## AS FOR A FIFTH CAUSE OF ACTION

68.     Plaintiff repeats and re-alleges paragraphs 1 through 67 as if each paragraph is repeated and re-alleged verbatim herein.

17

69.    Defendants, while arresting Plaintiff in the street subjected him to excessive force

by slamming him on the concrete floor violently and also by putting the handcuffs

on him too tight and refusing to loosen same and by so doing subjected Plaintiff to

excessive force in violation of his Fourth Amendment right not to be subjected to

unreasonable searches and seizures.

## AS FOR A SIXTH CAUSE OF ACTION

70.    Plaintiff repeats and re-alleges paragraphs 1 through 69 as if each paragraph is

repeated and re-alleged verbatim herein.

71.    Defendants by handcuffing Plaintiff to a poll at the Precinct in such a way that he

was in pain for hours and with limited movement of his limbs, inability to seat

down and without opportunity to use the rest room subjected him to unreasonable

seizure in violation of the Fourth Amendment. Plaintiff alleges that in the

alternative, such treatment subjected him to cruel and unusual punishment in

violation of his Eight Amendment rights not to be subjected to cruel and unusual

punishment.

## AS FOR A SEVENTH CAUSE OF ACTION

72.    Plaintiff repeats and re-alleges paragraphs 1 through 71 as if each paragraph is

repeated and re-alleged verbatim herein.

18

73.     Defendant Police Officers acting concertedly among themselves arrested Plaintiff and charged and prosecuted him for gun possession in fulfilment of the promise made to him by Defendants that they would get him for being a "smart ass" for refusing to open a locked door in the house, protesting the ransacking of the house and asking for a warrant which authorized Defendants to come into the house without consent, ransack it and threaten to arrest Plaintiff and break down a door that was locked.

74.     In asking questions of Defendant Officers who came to the house without a warrant and were ransacking it and threatening Plaintiff and, in protesting their actions which Plaintiff believed violated his constitutional rights as well as that of the owner of the house, Plaintiff was protected by the First Amendment to the United States Constitution.

75.     In arresting Plaintiff for his constitutionally protected speech and charging and prosecuting him for gun possession, Defendants retaliated against Plaintiff and violated Plaintiff's right to freedom of expression and are therefore liable to Plaintiff under 42 U.S.C. § 1983.

## AS FOR AN EIGHT CAUSE OF ACTION

76.     Plaintiff repeats and re-alleges paragraphs 1 through 75 as if each paragraph is repeated and re-alleged verbatim herein.

19

77.    Defendant Police Officers acting in concert and among themselves arrested
Plaintiff for armed robbery and prosecuted him for armed robbery in retaliation
for his failure to agree to work as a police informant for them.

78.    In refusing to work as a police informant and in telling Defendant Police Officers
that he did not know any type of person that the police could be looking for in the
community to inform the police about his or her activities, Plaintiff was exercising
his constitutional right to freedom of expression and association protected by the
First Amendment to the United States Constitution.

79.    In arresting Plaintiff for his constitutionally protected speech and charging and
prosecuting him for armed robbery, Defendants retaliated against Plaintiff and
violated Plaintiff's right to freedom of expression and association are therefore
liable to Plaintiff under 42 U.S.C. § 1983.

## AS FOR A NINTH CAUSE OF ACTION

80.    Plaintiff repeats and re-alleges paragraphs 1 through 79 as if each paragraph is
repeated and re-alleged verbatim herein.

81.    At all times relevant and material to this case, Defendant City of New York was
the employee of all the individual Defendants in this case and the Defendants
acted as agents of the City of New York and the City of New York is therefore

20

responsible for the actions of the Defendants alleged herein which were in violation of Plaintiff's common law rights under the agency doctrine and/or respondent superior rule and for the violation of Article 1, § 12 of the New York State Constitution which makes the City responsible for the actions of its agents/servants  when they violate Article 1 § 12 of the New York State Constitution.

**WHEREFORE,** Plaintiff prays for judgment awarding him:

1.   As against the individual Defendants for violation of his federal constitutional rights, jointly and severally:

    i.   general and compensatory damages in an amount that would adequately compensate him for the violation of his rights and for his emotional, mental, and physical distress;  against all Defendants, jointly and severally;

    ii.   lost earning and lost opportunities to earn income, in the amount to be proved at trial and in accordance with proof;

    iii.   punitive damages in an amount sufficient to punish the individual Defendants and deter others like them from repeating such unlawful conduct – against the individual Defendants, jointly and severally;

    iv.   attorneys' fees and the costs and disbursements of this action -- against all Defendants, jointly and severally; and

    v.   such other relief as the court deems just and proper.

2.    As against the individual Defendants and the City of New York for violation of

Article 1 § 12 of New York State Constitution, jointly and severally:

    i.    general and compensatory damages in an amount that would adequately

        compensate him for the violation of his rights and for his emotional,

        mental, and physical distress; against all Defendants, jointly and severally;

    ii.    lost earning and lost opportunities to earn income, in the amount to be

        proved at trial and in accordance with proof;

    iii.    punitive damages (against the individual defendants only) in an amount

        sufficient to punish the individual Defendants and deter others like them

        from repeating such unlawful conduct – against the individual Defendants,

        jointly and severally;

    iv.    attorneys' fees and the costs and disbursements of this action -- against all

        Defendants, jointly and severally; and

    v.    such other relief as the court deems just and proper.

3.    As against the City of New York and the individual Defendants, for the violation

of his common law rights:

    i.    general and compensatory damages in an amount that would adequately

        compensate Plaintiff for the violation of his rights and for his emotional,

        mental, and physical distress; against all Defendants, jointly and severally;

    ii.    lost earning and lost opportunities to earn income, in the amount to be

        proved at trial and in accordance with proof, against all Defendants, jointly

and severally;

iii.     punitive damages in an amount sufficient to punish the individual

Defendants and deter others like them from repeating such unlawful

conduct – against the individual Defendants, jointly and severally;

iv.     the costs and disbursements of this action -- against all

Defendants, jointly and severally; and

v.     such other relief as the court deems just and proper.


Dated: Brooklyn, New York
       January 4, 2012


                                   OFODILE & ASSOCIATES, P.C.
                                   Attorneys for Plaintiff


                                   By
                                   Anthony C. Ofodile, Esq. (AO-8295)
                                   498 Atlantic Avenue
                                   Brooklyn, New York 11217
                                   718 852-8300


23